IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

FRANCISCO J. SALGADO )
and KIMBERLY A. CAMPBELL )
SALGADO, )
)
          Plaintiffs, )   TC-MD 110245C
)
   v. )
)
DEPARTMENT OF REVENUE, )
State of Oregon, )
)
          Defendant. )   **DECISION**

Plaintiffs took charitable deductions on their 2007 and 2008 Oregon tax returns for the value of certain vouchers donated to various charities redeemable for photography sessions. Defendant audited those returns and reduced the claimed deductions. This appeal ensued. Trial was held at the Tax Court in Salem, Oregon, on June 5, 2012. Plaintiffs Francisco Salgado (Salgado) and Kimberly Campbell Salgado (Campbell) appeared on their own behalf.[1] Defendant was represented by Anita Puckey, Income Tax Auditor.

## I.  STATEMENT OF FACTS

The deductions Plaintiffs claimed on their returns for the years at issue were certificates for portrait sittings that Plaintiffs donated to various nonprofit charitable organizations. Salgado testified at trial that he and Campbell have been in the photography business since 1995. Salgado further testified that Plaintiffs operated a reputable studio and were approached by members of the community to donate to their charities. Plaintiffs agreed to donate "certificates" that could be redeemed by the recipient for a "photography session" and an 11 x 14 inch "gallery

---

[1] Plaintiffs were originally represented by Robert D. Russell, CPA. However, for reasons not explained to the court, Plaintiffs appeared at trial without representation and stated their preference to proceed without Mr. Russell's representation, indicating that he was no longer their representative.

portrait." The certificates were only valid for six months. Plaintiffs testified that while not all of the certificates were redeemed, 90 to 95 percent were redeemed. Campbell testified that they donated 37 gift certificates in 2007 and 56 and 2008. Plaintiffs valued the certificates at the current going-rate for a comparable photography session; according to Plaintiffs, most were worth at least $700 to $800 each.

Plaintiffs reported a charitable donation in the amount of $31,572 on their 2007 return and $49,113 on their 2008 return. Defendant allowed $5795 for 2007 and $8840 for 2008. Those amounts came from an IRS determination that Plaintiffs' cost was 18 percent of the fair market value of the items donated each year. (Def's Ans at 1.)

Plaintiffs contend that the donated vouchers constitute "art work." Plaintiffs did not introduce any evidence at trial, although they provided some information to Defendant during the audit. Defendant did not introduce that information, nor was it required to do so. When questioned by the court, Plaintiffs explained that they did not have their art work appraised because their accountant advised them that an appraisal was necessary only if the value of any particular donated item exceeded $5000. Moreover, Salgado testified that he was not certain anyone in the area was qualified to appraise the donated art work; if such a qualified appraiser existed, the cost to obtain the appraisal would be prohibitive.

## II. ANALYSIS

Plaintiffs have asked the court to allow the charitable contribution deductions claimed on their 2007 and 2008 returns as contributions of art work (i.e., they have asserted that they are entitled to the "artist's deduction.") Plaintiffs acknowledge that they may not have "followed the letter of the law," but believe the donations themselves qualify as charitable contributions and the value can be easily established. Defendant allowed Plaintiffs a deduction for a portion of the

amounts claimed based on the apparent basis Plaintiffs had in the donations. Defendant does not believe Plaintiffs are entitled to any further deduction as they do not have an appraisal establishing the value of the donations; Defendant asserts that Plaintiffs' value calculations cannot be accepted because the law requires an appraisal by an independent third party.

There are two code provisions that apply in this case. One is Internal Revenue Code (IRC) section 170,[2] and the other is ORS 316.838.[3]

A.    IRC Section 170

IRC section 170(a)(1) allows a deduction for charitable contributions "only if verified under regulations prescribed by the Secretary." For contributions of property other than money the taxpayer is required to maintain a separate receipt from each donee that includes the donee's name, donation date and location, and description of the donated property. Treas. Reg. § 1.170A-13(b)(1). The taxpayer is also required to keep "reliable records" that include, in addition to the requirements above, the fair market value of the property donated and the method used to determine that value, and the cost or other basis of the property. Treas. Reg. § 1.170A-13(b)(2).

Importantly, both the code and regulations require the taxpayer to obtain and retain a "qualified appraisal" for contributions exceeding $5000. IRC § 170(f)(11)(C); Treas. Reg. § 1.170A-13(c)(1) and (2). Plaintiffs argue that the $5000 appraisal requirement applies to each donated item whereas Defended argues that the $5000 figure applies to the aggregate value of all donations in a given year. The court finds that Defendant has the correct interpretation of the law.

_____

[2] All references to the IRC and accompanying regulations are to the 1986 Code.

[3] Unless otherwise noted, references to the Oregon Revised Statutes (ORS) are to the 2005 or 2007 years.

The regulation provides in relevant part:

"For purposes of this paragraph (c), *the amount claimed or reported* as a deduction for an item of property *is the aggregate amount* claimed or reported as a deduction for a charitable contribution under section 170 [26 USCS § 170] for such items of property and all similar items of property (as defined in paragraph (c)(7)(iii) of this section) by the same donor for the same taxable year (whether or not donated to the same donee)." (Emphasis added.)

Treas. Reg. § 1.170A-13(c)(1)(i). The substantiation requirements set forth in Treas. Reg. § 1.170A-13(c)(2)(i), provide that

"a donor who claims or reports a deduction with respect to a charitable contribution to which this paragraph (c) applies must comply with the following three requirements:

"(A) Obtain a qualified appraisal (as defined in paragraph (c)(3) of this section) * * *.

"(B) Attach a fully completed appraisal summary (as defined in paragraph (c)(4) of this section) to the tax return * * * on which the deduction for the contribution is first claimed (or reported) by the donor.

"(C) Maintain records containing the information required by paragraph (b)(2)(ii) of this section."

The appraisal requirements are mandatory, as evidenced by a use of the word "must" in the regulation. The regulation comports with legislative intent to make the appraisal requirements mandatory. The House Report for the Deficit Reduction Act of 1984 provides in relevant part:

"[T]he conference agreement requires * * * that the Treasury Department must issue temporary or final regulations under section 170 before January 1, 1985 incorporating the substantiation requirements as set forth in this section of the conference agreement. Accordingly, pursuant to present law (sec.170(a)(1)), which expressly allows a charitable deduction only if the contribution is verified in the manner specified by Treasury regulations, no deduction is allowed for a contribution of property for which an appraisal is required under the conference agreement unless the appraisal requirements are satisfied."

/ / /

HR Conf. Rep. No. 98-861 at 995 (1984); see *Hewitt v. Comm'r*, 166 F3d 332, WL 802042, at *2 (4th Cir1998) (unpub'd op) (quoting conference report and concluding that appraisal requirement is mandatory).

It is clear from the regulations that Plaintiffs were required to obtain a qualified appraisal. A "qualified appraisal" is an appraisal document that is made at or near the date of donation; is prepared, dated, and signed by a "qualified appraiser;" includes certain required information specified in the Treasury regulations; and does not involve a prohibited appraisal fee. Treas. Reg. § 1.170A-13(c)(3)(i).[4] A "qualified appraiser" is an individual who "either holds himself or herself out to the public as an appraiser or performs appraisals on a regular basis;" is professionally qualified in terms of background, experience, education, etc., to make appraisals of the type of property being valued and sets out those qualifications in the appraisal; is not the donor, donee, a relative or employee of either, or "a party to the transaction in which the donor acquired the property being appraised;" and is aware of the sanctions for making intentionally false or fraudulent overstatements of value. Treas. Reg. § 1.170A-13(c)(5).

The 11 specific items of information required by Treas. Reg. § 1.170A-13(c)(3)(ii) for a qualified appraisal include the following:

/ / /

---

[4] The official definition of a "qualified appraisal" in Treas. Reg. section 1.170A-13(c)(3)(i) is as follows:

"(i) In general. For purposes of this paragraph (c), the term "qualified appraisal" means an appraisal document that--

"(A) Relates to an appraisal made not earlier than 60 days prior to the date of the contribution of the appraised property nor are later than the date specified in paragraph (c)(3)(iv)(B) of this section [the due date of the return on which the deduction is first claimed];

"(B) Is prepared, signed and dated by a qualified appraiser * * *;

"(C) Includes the information required by paragraph (c)(3)(ii) of this section; and

"(D) Does not involve an appraisal fee prohibited by paragraph (c)(6) of this section."

"(F) The qualifications of the qualified appraiser who signs the appraisal, including the appraiser's background, experience, education, and membership, if any, in professional appraisal associations;

" * * * * *

"(J) The method of valuation used to determine the fair market value, such as the income approach, the market-data approach, and the replacement-cost-less-depreciation approach; and

"(K) The specific basis for the valuation, such as specific comparable sales transactions or statistical sampling, including a justification for using sampling and an explanation of the sampling procedure employed."

The regulations define an "appraisal summary" as "a summary of a qualified appraisal that (A) [i]s made on the form prescribed by the [IRS]; (B) [i]s signed and dated * * * by the donee * * *; (C) [i]s signed and dated by the qualified appraiser * * *; and (D) [i]ncludes [certain required information]." Treas. Reg. 1.170A-13(c)(4)(i). The appraisal summary is just that – a summary of a complete appraisal made in accordance with the regulations.

Plaintiffs do not have an appraisal, qualified or otherwise. Instead, Plaintiffs calculated the value of their donation based on the rate charged for the type of session donated (*i.e.*, their usual fee for the service/product). This court has previously ruled that a taxpayer without a qualified appraisal will not be allowed a deduction on the taxpayer's return even if it is clear such a donation was made. See e.g., *Gradin v. Dept. of Rev.*, TC-MD 050026C, 2005 WL 3047248 (2005) (denying a deduction for the donation of a manufactured home where there was clearly no dispute about the existence of the donation, but no appraisal to substantiate value).

B.     ORS 316.383 Art Object Donation

Oregon has a statute, ORS 316.383, which specifically addresses donations of art. ORS 316.383 provides:

/ / /

"(1) If an art object has not been previously sold or otherwise transferred by its creator and the creator makes a charitable contribution of the art object that qualifies for the deduction allowed by section 170 of the Internal Revenue Code for the taxable year, there shall be subtracted from federal taxable income any positive amount obtained by subtracting:

"(a) The amount otherwise deductible on the Oregon tax return of the taxpayer-creator for the taxable year as charitable contributions from

"(b) The amount that would have been deductible by the taxpayer-creator if the deduction for charitable contributions had been computed without reduction in amount under section 170 (e) of the Internal Revenue Code for the art object charitably contributed by its creator.

"(2) As used in this section, "art object" means a painting, sculpture, photograph, graphic or craft art, industrial design, costume or fashion design, tape or sound recording or film.

"(3) No additional subtraction shall be allowed to the taxpayer-creator under this section unless the tax return is accompanied by a copy of an *appraisal report* showing the fair market value of the art object at the time the contribution was made." (Emphasis added.)

Like the federal code provision, ORS 316.383 requires Plaintiffs to submit an appraisal.

### III. CONCLUSION

The court concludes that Plaintiffs are not entitled to deduct as charitable contributions for 2007 or 2008 any amounts above those allowed by Defendant during the audit. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of July 2012.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*
*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on July 24, 2012.  The Court filed and entered this document on July 24, 2012.*